**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff - Appellee,<br><br> v.<br><br>JOHN ROWLAND MILLS,<br><br>    Defendant - Appellant. | No. 13-10604<br><br>D.C. No. 2:12-cr-01660-JAT-1<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the District of Arizona
James A. Teilborg, Senior District Judge, Presiding

Submitted February 4, 2015[**]
San Francisco, California

Before: TALLMAN and RAWLINSON, Circuit Judges, and MURPHY, District
Judge.[***]

---

[*]  This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

[**]  The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

[***]  The Honorable Stephen Joseph Murphy III, United States District
Judge for the Eastern District of Michigan, sitting by designation.

John Rowland Mills appeals the district court's denial of his post-verdict motion for judgment of acquittal on Count 15 of a 15-Count indictment for federal wire fraud, 18 U.S.C. § 1343 (2012). Mills was found guilty by a federal jury for violating 18 U.S.C. § 1343—the federal wire fraud statute—after he embezzled nearly $130,000 from his employer and used an interstate wire transfer (from Florida to Arizona) to cover his tracks. We have jurisdiction under 28 U.S.C. § 1291 (2012). Because we find that ample evidence supports the guilty verdict, we affirm.

We review de novo a district court's denial of a motion for acquittal. *United States v. Jinian*, 725 F.3d 954, 959 (9th Cir. 2013). We affirm a conviction if there is sufficient evidence to support it. "Sufficient evidence to support a conviction exists if, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* at 959–60 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

Section 1343 criminalizes conduct by an individual who, "having devised or intending to devise any scheme or artifice to defraud, . . . transmits or causes to be transmitted by means of wire . . . communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of

2

executing such scheme or artifice . . . ." 18 U.S.C. § 1343. To sustain a conviction under § 1343, the government must establish that the defendant (1) developed a scheme to defraud; (2) used a wire, radio, or television in interstate commerce to further that scheme; and (3) had specific intent to defraud. *See United States v. Pelisamen*, 641 F.3d 399, 409 (9th Cir. 2011). Only the second element is at issue here.

We have recently considered whether and how the government can meet its burden at step two where, as here, the defendant uses an interstate wire only after "*all* the intended proceeds of the scheme have been obtained." *United States v. Tanke*, 743 F.3d 1296, 1302 (9th Cir. 2014). In *Tanke* we held that after-the-fact "mailings designed to avoid detection or responsibility for a fraudulent scheme fall within the mail fraud statute when they are sent before the scheme is completed. To determine when a scheme ends, we look to the scope of the scheme as devised by the perpetrator." *Id.* at 1305.[1]

---

[1] Although *Tanke* addresses the federal mail fraud statute, its holding applies here because "[i]t is well settled that cases construing the mail fraud and wire fraud statutes are applicable to either." *United States v. Shipsey*, 363 F.3d 962, 971 n.10 (9th Cir. 2004).

Here, we must consider whether any reasonable jury could have found that Mills's transfer of nearly $100,000 back into his employer's account was part of his embezzlement scheme as he devised it.

We agree with the district court that the answer to this question is yes. There is ample evidence from which the jury could conclude that the embezzlement scheme as devised by Mills always included the cover-up. Mills told FBI Special Agent Marilyn Shefveland that he originally planned to "reassemble the hundred thousand dollars to the campaign account" with proceeds from his business ventures. Mills even intended to pay interest on the money he took. Mills knew that his employer's campaign invoices would come due close to the election (November 4, 2008), and so he was careful to reimburse the account by October 31, 2008. Mills told Shefveland that he replenished the account because "he did not want to lose his job." Interstate transfers—such as Mills's—"designed to lull the victims into a false sense of security, postpone their ultimate complaint to the authorities, and therefore make the apprehension of the defendants less likely," fall within 18 U.S.C. § 1343. *United States v. Lane*, 474 U.S. 438, 451–52 (1986); *see also Jinian*, 725 F.3d at 962.

Based on the evidence adduced at trial, any rational juror could conclude that the cover-up, which Mills executed using an interstate wire transfer, was always an essential part of Mills's embezzlement scheme.

**AFFIRMED**.